[Cite as *State v. Unger*, **2017-Ohio-8824.**]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | | |
|---|---|---|---|
| STATE OF OHIO | : | | JUDGES: |
| | : | | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | | |
| | : | | |
| MICHELLE UNGER | : | | Case No. 2017CA0009 |
| | : | | |
| Defendant-Appellant | : | | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Municipal Court,
                                    Case No. CRB1600815



JUDGMENT:                           Affirmed



DATE OF JUDGMENT:                   December 4, 2017



APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

RICHARD J. SKELTON                     PATRICK J. WILLIAMS
760 Chestnut Street                    405 Chauncey Avenue, NW
Coshocton, OH  43812                   New Philadelphia, OH  44663

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant, Michelle Unger, appeals her February 9, 2017 conviction by the Municipal Court of Coshocton County, Ohio. Plaintiff-Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 18, 2016, appellant was charged with cruelty against companion animals in violation of R.C. 959.131(D)(2), a misdemeanor in the second degree. Said charge arose from the removal of her dog "Bruiser" from her home on September 21, 2016.[1]

{¶ 3} A bench trial commenced on February 8, 2017. By judgment entry filed February 9, 2017, the trial court found appellant guilty, and sentenced her to forty days in jail, thirty days suspended in lieu of compliance with three years of probation. The trial court also ordered appellant to forfeit her dog to the Humane Animal Treatment Association, and prohibited her from owning or caring for any companion animals for three years.

{¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶ 5} "THE TRIAL COURT ERRED AS ITS CONVICTION OF MICHELLE UNGER FOR A VIOLATION OF R.C. 959.131(D)(2) WHICH WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

---

[1] Several dogs were removed from appellant's home. This case is limited to Bruiser. A companion case involves a dog named "Yap" and his registered owner, Eric Unger, appellant's son (App. No. 2017CA0001).

I

{¶ 6}   In her sole assignment of error, appellant claims her conviction for cruelty against companion animals was against the manifest weight of the evidence.   We disagree.

{¶ 7}   On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [trial court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."   *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).   *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).   The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 8}   Appellant was convicted of cruelty against companion animals in violation of R.C. 959.131(D) which states the following:

(D) No person who confines or who is the custodian or caretaker of

a companion animal shall negligently do any of the following:

(1) Torture, torment, or commit an act of cruelty against the

companion animal;

(2) Deprive the companion animal of necessary sustenance or

confine the companion animal without supplying it during the confinement

with sufficient quantities of good, wholesome food and water if it can

reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation or confinement;

(3) Impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the lack of adequate shelter.

{¶ 9} Robert Hunt testified on September 21, 2016, he called the Coshocton County Sheriff for a dog at-large. T. at 7. The dog, named Bruiser, belonged to his neighbor who lived across the street. T. at 7, 10. Another neighbor came home, but was unable to get out of her car because the dog was on her property barking at her. T. at 8.

{¶ 10} Kayla Fink testified on September 21, 2016, she arrived at home, exited her car, and then jumped back in because appellant's dog was four feet away and barking at her. T. at 12. She did not know if the dog was aggressive or not. *Id.* The dog was on her sidewalk "almost by my steps." T. at 13.

{¶ 11} Russell Dreher, the county Dog Warden, testified on September 21, 2016, he was called for a dog at-large complaint. T. at 19. Mr. Dreher spoke to both Mr. Hunt and Ms. Fink about the loose dog. T. at 21-22. Mr. Dreher observed the loose dog on appellant's steps. T. at 21. He took custody of the dog and asked dispatch to contact appellant, but dispatch was unable to make contact with her. T. at 22. He took pictures

of the dog and turned him over to the animal shelter.  T. at 24-25; Plaintiff's Exhibit B. On September 23, 2016, appellant called and told Mr. Dreher she was not at home as she was out on the road working.  T. at 27.  Mr. Dreher was informed by appellant's son, Eric Unger, that John Collins was hired to watch the dog.  T. at 45, 51.  Mr. Collins told Mr. Dreher he watched the dog for a couple days and then left for an emergency.  T. at 47, 49.  Mr. Dreher issued a citation to appellant for failure to confine Bruiser which was enhanced because of prior convictions, failure to have a current dog tag, and cruelty to animals because of his condition.  T. at 32-33.

{¶ 12} Rachael Selders testified she was volunteering at the animal shelter and was there when Bruiser was brought in.  T. at 53.  She opined the dog was "[v]ery emaciated."  T. at 54.  She gave him two nice bowlfuls of food as he was very hungry. T. at 55.

{¶ 13} Dr. Christy Nicely, a veterinarian, observed a picture of Bruiser taken in September and scored him a three out of nine, with five being ideal.  T. at 65-66.  When she saw Bruiser almost a month later, she scored him a five out of nine.  *Id.*  Bruiser had hookworms, fleas, flea dirt, worn incisors, a broken canine tooth, a firm testicle, a skin lump in his right flank, and "a couple small areas of hair loss on his front legs."  T. at 67-68.  When asked if the dog initially scored low because of the hookworms or because he was deprived of food, Dr. Nicely opined, "I believe deprived of food" because he was not treated for the hookworms during the time he improved.  T. at 69. His condition did not occur over a couple of days, but rather longer than a week.  T. at 70.

{¶ 14} Christina Sturtz, the county Humane Agent, testified she observed Bruiser and opined he appeared emaciated and lacked both water and food.  T. at 100.  She stated when given food and water, Bruiser reacted "typical of the animals I have seen deprived of food and water.  They don't know whether to eat or drink.  It's a back-and-forth thing."  T. at 100-101.

{¶ 15} John Collins testified appellant asked him to take care of her dog which he did for a couple of days, but then left because "I had something I had to do and I wasn't feeling good."  T. at 110-111.  He called another person that appellant had arranged to watch the dog "if something ended up happening."  T. at 111.  That person came to the house and he left.  *Id.*  He never received payment for watching the dog.  T. at 110, 113.  No one in the home left him with any dog food to care for the dog.  T. at 112-113.  He stated he "walked around Coshocton, gathered up cans, and got a $5 bag of dog food because this is as much cans as I could get and fed them."  T. at 112.

{¶ 16} In defense, appellant called Brenda Roberts and Cody Weese.  Ms. Roberts lived in appellant's home in September of 2016.  T. at 124.  She testified appellant cared for her dog, giving him food and water and taking him outside.  T. at 125.  When appellant went on the road for work, she made arrangements with Mr. Collins and a Jessica Jensen to care for her dog.  *Id.*  Ms. Roberts observed appellant hand them money.  T. at 126.  When appellant left the house, the dog was "in great condition," which was two days before he was removed by the dog warden.  T. at 126, 132*.*  Ms. Roberts stated Mr. Collins left after three days and did not make arrangements with anyone else to care for the dog.  T. at 127.  She admitted two of her dogs were also taken by the dog warden and she was facing charges.  T. at 135-136.

{¶ 17} Mr. Weese, a family friend, testified appellant always took care of her dog, making sure food and water were available. T. at 139. Appellant always made arrangements for someone to care for the dog when she left to go out on the road. T. at 141. He overheard appellant talking on the telephone about giving Mr. Collins $50 to watch the dog. *Id.*

{¶ 18} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 19} After entertaining all of the testimony and evidence, the trial court found Mr. Collins "was one of the least believable witnesses I've heard in a few days. The Court concludes that in spite of Mr. Collins the State has proven all of the charges of the defendants beyond a reasonable doubt." T. at 154.

{¶ 20} Given the testimony and the evidence presented, we do not find that the trial court lost its way. Appellant was the registered owner of Bruiser. Both Ms. Selders and Ms. Sturtz testified to Bruiser looking emaciated and being very hungry. Dr. Nicely explained although Bruiser had hookworms, the hookworms were not the cause of his appearance because his condition improved after he was given food and water. She opined Bruiser was deprived of food, and it took longer than a week for him to reach the condition he was in at the time of his removal from the home. Appellant was at home during this "longer" time period. Bruiser's ribs were clearly visible in the photographs.

{¶ 21} Upon review, we do not find any manifest miscarriage of justice.

{¶ 22} The sole assignment of error is denied.

{¶ 23} The judgment of the Municipal Court of Coshocton County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Hoffman, J. concur.

EEW/sg 1122